UNITED STATES DISTRICT COURT  C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ROBERT R. RUTTY,

                       Plaintiff,

           - against -   **MEMORANDUM**
                                    **DECISION & ORDER**

MERLVIN R. KRIMKO, ESQ., POWER   17-cv-6090 (BMC) (VMS)
HOME SALES 172 INC., SLF NEW YORK
HOLDINGS LLC, THE MARGOLIN &
WEINREB LAW GROUP, LLP, ALAN H.
WEINREB, ESQ., and GUSTAVIA HOME,
LLC

                       Defendants.
----------------------------------------------------------- X

**COGAN**, District Judge.

     Defendant Melvin Krimko moves to dismiss the claims brought against him by plaintiff Robert Rutty. This action is the third of three cases (involving many of the same parties) related to the foreclosure by Gustavia Home, LLC, on plaintiff's property located in Queens. The Court described the procedural history of this dispute in its January 12, 2018 order, and will repeat here only those parts necessary to address defendant Krimko's arguments.

## BACKGROUND

     Krimko's role in this case is rather small. In June 2016, Gustavia Home, LLC, filed a foreclosure proceeding against plaintiff. In February 2017, this Court entered judgment in that case, ordering foreclosure and sale of plaintiff's rental property. After the foreclosure, SLF New York Holdings LLC purchased the property. SLF then hired Krimko, a landlord-tenant attorney, to file eviction proceedings against plaintiff's tenants. In June 2017, Krimko served the tenants with 30-Day Notices of Termination required by New York Real Property Law § 232-a. Plaintiff

then wrote to Krimko, informing him that sending eviction letters to plaintiff's tenants was harassment and informing Krimko that the judgment in the foreclosure action was on appeal. On August 30, 2017, Krimko responded to plaintiff's letter, informing him that SLF now held title to the property and that Krimko only became involved with the property after it was conveyed to SLF. On September 12, 2017, SLF began holdover proceedings against the tenants in New York Civil Court in Queens County.

Plaintiff then filed this case, alleging claims against the parties involved in the foreclosure and eviction. Plaintiff alleges that, by filing the eviction suit and sending the related letters, Krimko committed: (1) slander of title, (2) unfair or deceptive acts or practices under New York General Business Law § 349(a) (McKinney's), (3) intentional infliction of emotional distress, and (4) conspiracy to join an existing conspiracy, under 18 U.S.C. § 371.

Krimko now moves to dismiss these claims, arguing that they are barred by the Noerr-Pennington doctrine and that plaintiff has failed to state a claim as to all of them. Reading plaintiff's opposition generously, he argues that he has stated a claim by showing that Krimko deliberately ignored facts and evidence that SLF did not have proper title to plaintiff's property.

The Court concludes that the Noerr-Pennington doctrine does not bar plaintiff's claims against Krimko. But because plaintiff has failed to plead sufficient facts to establish the elements of each of the claims he asserts against Krimko, those claims are dismissed.

**DISCUSSION**

**I.      Noerr-Pennington Doctrine**

The Noerr-Pennington doctrine protects the right of private actors to petition the government by shielding certain lobbying activities from liability (originally federal antitrust liability, and later, other types of liability). See Primetime 24 Joint Venture v. Nat'l Broad., Co.,

2

219 F.3d 92, 99 (2d Cir. 2000), Doron Precision Sys., Inc. v. FAAC, Inc., 423 F. Supp. 2d 173, 189 (S.D.N.Y. 2006). The Supreme Court later extended the doctrine to *bona fide* (non-sham) petitioning actions before state and federal courts and administrative agencies. See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510-11 (1972). Courts have since extended the doctrine to other concerted efforts incident to petitioning, such as pre-litigation threat letters and settlement offers. Primetime 24, 219 F.3d at 100 (collecting cases).

The Supreme Court first applied the doctrine to bar liability for petitioning activity under the Sherman Act, and later under the National Labor Relations Act. See BE & K Const. Co. v. N.L.R.B., 536 U.S. 516 (2002). The Second Circuit has applied it to suits alleging that petitioning activities violated antitrust and copyright statutes. See Primetime 24, 219 F.3d at 97. District courts in this circuit have applied Noerr-Pennington in trademark cases, Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc., No. 06 CIV. 2652, 2009 WL 884515, at *6 n.4 (S.D.N.Y. Mar. 31, 2009) (collecting cases), and to claims for tortious interference with prospective business relations where the allegedly tortious interference was lobbying a governmental entity, see EDF Renewable Dev., Inc. v. Tritec Real Estate Co., Inc., 147 F. Supp. 3d 63, 68 (E.D.N.Y. 2015); see also Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P., 229 F.3d 1135 (2d Cir. 2000) (summary order) (applying the doctrine to bar a claim under New York General Business Law § 349).

Krimko argues that the Noerr-Pennington doctrine bars plaintiff's claims against him because the actions which plaintiff alleges he took – commencing eviction proceedings, sending eviction notices, and responding to plaintiff's letter – were all incident to the foreclosure litigation.

Krimko's argument ignores a key aspect of Noerr-Pennington: the doctrine blocks liability for non-sham petitioning activity which implicates the Petition Clause of the First Amendment, not all claims based on lawsuits or pre-litigation activity. As described above, courts have extended the doctrine to cover different types of petitioning activity, from lobbying the legislature to asking a county to deny a competitor's permit to petitioning a federal agency. Courts have applied the doctrine to block liability under the Sherman Act, the Clayton Act, the National Labor Relations Act, RICO, and other statutes and common-law theories. But in all of these cases, courts applied the doctrine to bar liability for defendant's *petitioning* activity.

Noerr-Pennington does not apply here because the underlying action has nothing to do with petitioning the government: Krimko sent the demand letters and filed the eviction suit to enforce a private contractual right against plaintiff. Enforcing a deed by evicting allegedly unauthorized tenants does not implicate a right protected by the Petition Clause. Cf. In re Ciprofloxacin Hydrochloride Antitrust Litig., 261 F. Supp. 2d 188, 212-13 (E.D.N.Y. 2003).

The Court is therefore not persuaded by the reasoning in the most apposite case Krimko cites, Singh v. NYCTL 2009-A Tr., 683 F. App'x 76 (2d Cir. 2017) (summary order). In Singh, the Second Circuit affirmed the district court's conclusion that Noerr-Pennington barred liability for the defendant's demand and default letters and settlement communications which arose out of the defendant's good-faith foreclosure suit against the plaintiff's properties. But the Singh district court's opinion overlooked the same key distinction Krimko's argument elides here: the underlying conduct of suing to foreclose on a mortgage (or here, evict tenants) is not petitioning activity, it is a suit to enforce a private contract. See Singh, 2016 WL 3962009, at *4.

4

Because Krimko's underlying conduct – filing the eviction proceeding and sending eviction-related communications – does not implicate the Petition Clause, the Noerr-Pennington doctrine does not apply to bar plaintiff's claims against Krimko.

**II.      Failure to State a Claim**

Krimko also moved to dismiss the complaint against him under Federal Rule of Civil Procedure 12(b)(6), failure to state a claim. To survive a motion to dismiss, a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). When evaluating whether a complaint states a claim for relief, a court must accept all of the facts alleged in it as true, but need not accept its legal conclusions. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level," and nudge a plaintiff's claims "across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570. A plaintiff must plead facts to support his claims, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

*Pro se* complaints, like other pleadings, must allege enough facts to meet the plausibility standard. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). But courts read *pro se* pleadings "liberally," holding them to less stringent standards than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). A court must read a *pro se* complaint to raise the strongest claims it suggests. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,474-75 (2d Cir. 2006). If a liberal reading of the pleading "gives any indication that a valid claim might be stated," the court should not dismiss without granting leave to amend it at least once. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.

2000) (citation and internal quotation marks omitted).  In all cases – *pro se* or counseled – the court's task of determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

### A. Claim for Slander of Title

Plaintiff has failed to state a claim for slander of title.  To recover for slander of title under New York law, a plaintiff must show that "(1) a communication falsely casting doubt on the validity of [the] complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages."  39 Coll. Point Corp. v. Transpac Capital Corp., 27 A.D.3d 454, 455, 810 N.Y.S.2d 520, 521 (2nd Dep't 2006).  "New York law also requires that [p]laintiff demonstrate that the statements are made with 'malice' or 'at least a reckless disregard for their truth or falsity.'"  Gonzalez v. J.P. Morgan Chase Bank, N.A., 228 F. Supp. 3d 277, 290 (S.D.N.Y. 2017) (citation omitted); see Terrace Hotel Co. v. State, 19 N.Y.2d 526, 530, 281 N.Y.S.2d 34, 38 (1967); Fink v. Shawangunk Conservancy, Inc., 15 A.D.3d 754, 756, 790 N.Y.S.2d 249, 251 (3rd Dep't 2005).  This requirement of malice or reckless disregard on defendant's part means that "[a] defendant who asserts a claim against property in good faith under an honest impression of its truth will not be penalized."  Markowitz v. Republic Nat. Bank of New York, 651 F.2d 825, 828 (2d Cir. 1981) (citation and internal quotation marks omitted).  The third element, special damages, refers to actual economic or pecuniary harm or loss resulting directly or immediately from defendant's conduct.  See Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 179 (2d Cir. 2000).  Because special damages are an element of the state offense, under Federal Rule of Civil Procedure 9(g), they must be "specifically stated" in the pleadings.

Here, plaintiff does not point to any facts in the complaint to support his slander-of-title claim as to defendant Krimko. Although plaintiff alleges the slander-of-title claim against all defendants, none of the stated allegations refer to Krimko or to actions that Krimko allegedly took. The complaint refers to "Gustavia Home, LLC, its agents and or attorneys" setting in motion actions "whereby documents were manufactured for the purposes of litigation, and Fake documents were then submitted to the Courts with intent to deceive." First, Krimko was hired by SLF Holding, not by Gustavia. Second, the complaint does not mention which fake documents Krimko allegedly submitted or provide any facts by which Krimko should have known that they were fake. Finally, although the complaint says that defendants have "caused to be recorded various documents . . . which has impaired the vendibility of title," plaintiff does not specifically itemize or identify with any particularity the damages caused any defendants, including Krimko, as required by Federal Rule of Civil Procedure 9(g).

Because plaintiff has not pleaded facts to support any of the elements, plaintiff's claim for slander of title as to defendant Krimko is dismissed.

### B. Claim for Unfair or Deceptive Acts or Practices under New York General Business Law § 349

Plaintiff has also failed to state a claim for unfair or deceptive acts under General Business Law § 349. "To state a claim under § 349, a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). Plaintiff has not pleaded facts to support any of these elements. First, Krimko's conduct was not "consumer-oriented" within the meaning of § 349 because it concerned a private contractual dispute. See Nials v. Bank of Am., No. 13 CIV. 5720, 2014 WL 2465289, at *3 (S.D.N.Y. May 30, 2014) (collecting cases). "A private dispute between Plaintiffs and

Defendants as to the title of a particular piece of property and mortgages and notes relevant to only the parties of this litigation" is not consumer-oriented within the meaning of § 349. Id.

Second, plaintiff has not plausibly alleged any deceptive conduct on Krimko's part. Plaintiff's complaint is full of legal conclusions about Krimko's alleged participation in a "scheme or artifice to defraud," a RICO conspiracy, and a conspiracy to obstruct a criminal investigation. But plaintiff does not point to any *facts* in his complaint showing that Krimko's conduct was deceptive (and the Court has discovered none). The only actions the complaint attributes to Krimko were initiating the eviction proceedings, sending eviction notices to plaintiff's tenants, and responding to plaintiff's letter about the eviction notices. None of those acts are inherently deceptive. Furthermore, plaintiff has not pointed to any damages he suffered because of Krimko's conduct (filing the eviction suit as directed by his client), rather than because of the allegedly improper foreclosure itself. For these reasons, plaintiff's claim against Krimko under § 349 is dismissed.

### C. Claim for Intentional Infliction of Emotional Distress

Plaintiff has also failed to state a claim for intentional infliction of emotional distress. Under New York law, that claim requires the plaintiff to plead: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. See Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993)).

Plaintiff's complaint does not allege facts to support any of these elements. This portion of plaintiff's complaint contains a rote recitation of the elements of an intentional-infliction-of-emotional-distress claim, but does not include any facts supporting those elements. For example,

8

for plaintiff pleaded that "[t]he defendants have intentionally or negligently taken actions which have caused the plaintiff severe emotional distress. As a proximate result, plaintiff suffered severe emotional distress." "Threadbare recitals of the elements" are not enough to state a claim. Iqbal, 556 U.S. at 678. Plaintiff must allege facts to show that Krimko's actions were intentional or negligent and that plaintiff suffered emotional distress because of those actions.

Even if plaintiff could point to evidence of Krimko's negligence or recklessness, or plaintiff's severe emotional distress in response to defendants' actions, he has not shown any facts to support the first element: that Krimko's conduct in filing the eviction action, sending eviction notices to plaintiff's tenants, or responding to plaintiff's letter was extreme or outrageous. It bears noting that this was a commercial investment that plaintiff made, not a residential mortgage. That makes in unlikely to support this tort, because "[e]xtreme and outrageous conduct" refers to beyond-the-pale behavior "which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 157 (2d Cir. 2014) (quoting Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 741 (1985)). Sending eviction notices or filing an eviction action, even when the validity of the eviction is contested, does not meet this very high standard. See also Gkanios v. Home Sav. of Am., 257 A.D.2d 602, 683 N.Y.S.2d 866 (2nd Dep't 1999).

### D. Claim for Conspiracy

Plaintiff has also failed to state a conspiracy claim against Krimko. Plaintiff's complaint refers to 18 U.S.C. § 371, a criminal statute prohibiting conspiracy to defraud the United States, but that statute does not include a private right of action for individuals to enforce it, so the Court construes his complaint to raise a claim for civil conspiracy. To plead a civil-conspiracy claim under New York law, a plaintiff must plead facts showing: "(1) an agreement between two or

9

more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Bigio v. Coca-Cola Co., 675 F.3d 163, 176 (2d Cir. 2012) (quoting Abacus Fed. Sav. Bank v. Lim, 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (1st Dep't 2010)).  New York only recognizes the tort of civil conspiracy when it is connected to a separately pleaded underlying tort, see ACR Sys., Inc. v. Woori Bank, 232 F. Supp. 3d 471, 479 (S.D.N.Y. 2017), so a plaintiff must adequately plead one, in addition to the four elements listed above.  Plaintiff has not pleaded an underlying tort against Krimko and therefore cannot survive a motion to dismiss on his conspiracy claim either.

## CONCLUSION

Plaintiff has failed to plead sufficient facts to state any of the four claims alleged against defendant Krimko; those claims are hereby dismissed.  However, in light of plaintiff's *pro se* status, the Court grants plaintiff 20 days' leave to file an amended complaint.  If plaintiff elects to file an amended complaint, it shall be captioned "AMENDED COMPLAINT" and bear the same docket number as this order, 17-cv-6090.  The amended complaint must state facts to support each of the elements of plaintiff's claims against Krimko.  The amended complaint will completely replace the original complaint, so plaintiff must include all claims he seeks to raise against all defendants, not just against Krimko.  If plaintiff does not to file a timely amended complaint, the claims against Krimko will be dismissed.

**SO ORDERED.**

                                                                      U.S.D.J.

Dated: Brooklyn, New York
        March 30, 2018